J. Bill BECKER and E. J. JACOBS *v.*
Paul RIVIERE, Secretary of State
of the State of Arkansas *v.*
THE FAIR ARKANSAS INTEREST RATE
COMMITTEE, Charles RAY, Chairman
Charles RAY, Individually, Charles RAY
as Representative of a Class

80-170                                604 S.W. 2d 555
Supreme Court of Arkansas
Opinion delivered September 15, 1980

*Youngdahl & Larrison*, by: *James E. Youngdahl*, Little Rock, for petitioners.

*Steve Clark*, Atty. Gen., by: *Russell Meeks, III*, Deputy Atty. Gen., and *Rodney E. Slater*, Asst. Atty. Gen., Little Rock, for respondent.

*Jim Guy Tucker*, of *Tucker & Stafford*, Little Rock, for intervenors.

JOHN F., STROUD, Justice. This is an original action filed by Petitioners on August 18, 1980, pursuant to Amendment No. 7 to the Arkansas Constitution, Ark. Stat. Ann. § 2-211 (Repl. 1976), and Rule 17 of this court, seeking to enjoin the Secretary of State from certifying proposed Constitutional Amendment No. 60. Petitioners contend that both the proposed popular name and the proposed ballot title are misleading and deceptive. They also allege that the proposed popular name obscures the true nature and effect of the proposed amendment, and that the proposed ballot title is tinged with partisan coloring and does not reflect the primary effect of the proposal. These allegations are controverted by respondent and the intervenor The Fair Arkansas Interest Rate Committee that sponsored the initiated petition. On March 31, 1980, which was prior to circulation of the initiative petition, the original draft was submitted to the Attorney General as required by Ark. Stat. Ann. § 2-208 (Repl. 1976). Although the statute authorizes him to "substitute and certify a more suitable and correct ballot title and popular name," on April 18, 1980, he approved and certified the ballot title and popular name in the same form as submitted by intervenors. Due to the immediacy of the deadline for publications required to include the proposed constitutional amendment on the ballot of the general election to be held on November 4, 1980, the case has been advanced by this court; the parties agreed to an accelerated submission schedule; the matter was submitted on the pleadings and the thorough briefs of petitioner, respondent and intervenors; and we issue this expedited opinion.

The proposed popular name, ballot title, and amendment are as follows:

[POPULAR NAME]
MAXIMUM RATE OF INTEREST CONTROLLED BY TWO-THIRDS VOTE OF GENERAL ASSEMBLY.

[BALLOT TITLE]
AN AMENDMENT TO ARTICLE XIX, SECTION 13 OF THE 1874 CONSTITUTION TO PROVIDE THAT THE MAXIMUM RATE OF INTEREST

SHALL NOT EXCEED 10 PERCENT EXCEPT BY LAW ENACTED BY TWO-THIRDS VOTE OF THE GENERAL ASSEMBLY; TO MAKE IT A CRIME KNOWINGLY TO CHARGE MORE THAN THE MAXIMUM RATE OF INTEREST AND TO ALLOW PERSONS PAYING MORE THAN THE MAXIMUM TO RECOVER TWICE THE AMOUNT OF INTEREST PAID.

[PROPOSED AMENDMENT]
BE IT ORDAINED BY THE PEOPLE OF THE STATE OF ARKANSAS THAT THE FOLLOWING SHALL BE AN AMENDMENT TO THE CON-STITUTION:

'Section 1. Section 13 of Article XIX of the Arkansas Constitution of 1874 be and the same is hereby amended to read as follows:

'Section 13. Interest. The General Assembly shall control, regulate and classify interest and set maximum effective rates thereof.

The maximum rate of interest collected shall not exceed ten (10) percent per annum unless otherwise provided by law enacted by affirmative vote of two-thirds (2/3) of the membership of each house of the General Assembly.

Contracts in excess of the maximum rate shall be void as to principal and interest unless otherwise provided by law.

Provided, in any event: (1) a person who knowingly charges interest in excess of the maximum rate shall be guilty of a crime; and (2) a person who has paid interest in excess of the maximum rate may recover not less than twice the amount of interest paid, within the time provided by law.'

The standards we use to determine the sufficiency or shortcomings of popular names and ballot titles have been ex-

pressed by this court on many occasions. In *Bradley* v. *Hall, Sec'y of State*, 220 Ark. 925, 251 S.W. 2d 470 (1952), several were mentioned:

> . . . On the one hand, it is not required that the ballot title contain a synopsis of the amendment or statute. *Sturdy* v. *Hall*, 204 Ark. 785, 164 S.W. 2d 884. It is sufficient for the title to be complete enough to convey an intelligible idea of the scope and import of the proposed law. *Westbrook* v. *McDonald*, 184 Ark. 740, 43 S.W. 2d 356, 44 S.W. 2d 331. We have recognized the impossibility of preparing a ballot title that would suit every one. *Hogan* v. *Hall*, 198 Ark. 681, 130 S.W. 2d 716. Yet, on the other hand, the ballot title must be free from 'any misleading tendency, whether of amplification, of omission, or of fallacy,' and it must not be tinged with partisan coloring. *Walton* v. *McDonald*, 192 Ark. 1155, 97 S.W. 2d 81.

A ballot title is sufficient if it identifies the proposed act and fairly recites the general purpose, and it need not be so elaborate as to set forth the details of the act. *Coleman* v. *Sherrill*, 189 Ark. 843, 75 S.W. 2d 248 (1934). However, a popular name and a ballot title must be free from "catch phrases and slogans which tend to mislead and to color the merit of a proposal on one side or the other . . ." *Moore* v. *Hall, Sec'y of State*, 229 Ark. 411, 316 S.W. 2d 207 (1958). The popular name and ballot title need only identify the proposal to the informed voter, but in the leading case of *Westbrook* v. *McDonald*, 184 Ark. 740, 43 S.W. 2d 356, 44 S.W. 2d 331 (1931), this court acknowledged the importance of informing the many electors who will derive their information from the ballot title:

> . . . We think the assertion may safely be ventured that it is only the few persons who earnestly favor or zealously oppose the passage of a proposed law, initiated by petition, who have attentively studied its contents and know how it will probably affect their private interests. The greater number of voters do not possess this information and usually derive their knowledge of the contents of a proposed law from an inspection of the title thereof, which is sometimes secured only from the very meager

details afforded by a ballot which is examined in an election booth preparatory to exercising the right of suffrage.

It is appropriate to determine what changes would occur from adoption of the proposed amendment inasmuch as the voter is really choosing between retention of the present law and substitution of something new. Article XIX, Section 13 of the Arkansas Constitution, which would be superseded by adoption of the proposed amendment, presently provides:

> All contracts for a greater rate of interest than ten percent per annum shall be void, as to principal and interest, and the General Assembly shall prohibit the same by law; but when no rate of interest is agreed upon, the rate shall be six per centum per annum.

By far the most significant change that the proposed amendment would allow is the abrogation of the present 10 per cent limit on interest rates. We think the proposed ballot title sufficiently puts a voter on notice of this change by stating "the maximum rate of interest shall not exceed 10 percent except by law enacted by two-thirds vote of the general assembly" and that it and the proposed popular name both fairly identify the true purpose of the amendment. We reject petitioners' contention that the ballot title is defective because it does not indicate that the present constitutional limit on interest rates is 10 per cent per annum. The ballot title is not required to state the present interest limitation, nor to summarize the Arkansas law on usury. Similarly, although the ballot title properly discloses that the proposed amendment makes it a crime to knowingly charge excess interest and discloses that a person charged excess interest may recover twice the interest paid, we do not think the ballot title is defective for failure to point out that this is a new sanction and a new form or relief. The fact that it is an amendment is sufficient to inform that change will result. Petitioners argue that language contained in the body of the proposed amendment authorizing the General Assembly to "control, regulate and classify interest" could allow that body to arbitrarily exclude certain charges as interest by legislative definition. They also argue that the General Assembly could provide

any interest ceiling or no interest ceiling, and that they could provide that contracts could remain enforceable even though usurious. We will not speculate as to the adoption of future legislation, nor require that warnings of possible or potential enactments be included in a constitutional amendment ballot title.

It is significant that the proposed popular name and ballot title have previously been submitted to and approved by the Attorney General pursuant to Ark. Stat. Ann. § 2-208 (Repl. 1976). A 1977 amendment to that statute directs the Attorney General to reject the entire ballot title, popular name and petition if he finds the ballot title or popular name to be "misleading." However, even prior to the adoption of this amendment (when the authority of the Attorney General was limited to certification of the ballot title and popular name submitted or preparation by him of substitutes), this court expressed the significance of that certification, and indicated a liberal construction should be given to the interpretation of the requirements of Amendment No. 7 and in determining the sufficiency of the ballot title. *Fletcher* v. *Bryant*, 243 Ark. 864, 422 S.W. 2d 698 (1968); *Mason & Lamb* v. *Jernigan, Sec'y of State*, 260 Ark. 385, 540 S.W. 2d 851 (1976).

Also of significance is the burden of proof in this matter. Once the intervenors had complied with Ark. Stat. Ann. § 2-201, et seq., and with the provisions of Amendment No. 7, the burden of proof clearly rested with petitioners. Amendment No. 7 provides, "In the event of legal proceedings to prevent giving legal effect to any petition upon any grounds, the burden of proof shall be upon the person or persons attacking the validity of the petition."

A careful comparison of the proposed ballot title to the text of the proposed constitutional amendment reveals that the title clearly tracks the language of the proposed amendment. We must also bear in mind that strict technical construction is not required, but that substantial compliance with Amendment No. 7 is all that is required. *Fletcher* v. *Bryant*, supra. As was pointed out in *Hoban* v. *Hall, Sec'y of State*, 229 Ark. 416, 316 S.W. 2d 185 (1958), it is our duty to

approve a ballot title "if it represents an impartial summary of the measure and contains enough information to enable the voters to mark their ballots with a fair understanding of the issues presented." Our task is not to require nor draft the perfect proposed popular name and ballot title, but merely to determine if those presented are legally sufficient. We find that the proposed popular name and the proposed ballot title to proposed Amendment No. 60 do conform to the standards established by the Arkansas Constitution, by the General Assembly and by this court.

The petition for an injunction is denied.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. In my opinion neither the popular name nor the ballot title is proper. The whole purpose of this proposed amendment is to increase the legal rate of interest in Arkansas and to eliminate the penalties now applied for usurious contracts. The heart of the proposed amendment is to remove the 10% per annum limit on interest rates from the present constitution.

I do not consider whether the proposed amendment is a good one or a bad one. I make no attempt to decide whether the people would be better off with its adoption or rejection. These issues are not for us to consider in this case nor would this Court ever be in a position to consider whether an amendment is a good one or bad one. We are considering only its legality.

In considering the legality, we must decide whether the popular name and ballot title are proper. All parties to this proceeding seem to agree that neither the popular name or ballot title should be unfair or misleading. We have ruled that the popular name and ballot title must not be misleading or color the merits of the proposal. *Hope* v. *Hall, Secy. of State*, 229 Ark. 407, 316 S.W. 2d 199 (1958); *Moore* v. *Hall, Secy. of State*, 229 Ark. 411, 316 S.W. 2d 207 (1958); *Hoban* v. *Hall, Secy. of State*, 229 Ark. 416, 316 S.W. 2d 185 (1958); *Mason & Lamb* v. *Jernigan, Sec'y. of State*, 260 Ark. 385, 540 S.W. 2d 851 (1976). We have made substantially the same ruling when we con-

sidered the ballot title only in the case of *Fletcher* v. *Bryant*, 243 Ark. 864, 422 S.W. 2d 698 (1968). In *Fletcher* we stated the title was sufficient if it identifies the proposed act and fairly alleges the general purpose.

There is no disagreement that the burden of proof is upon those attacking the validity of the popular name and ballot title of a proposal. Neither is there any disagreement that we give a liberal construction to the proposals in such cases.

I have previously stated the purpose of this proposal is to eliminate the present 10% limit on interest rates in the present constitution and to eliminate the penalties now provided in usury cases. The proposed ballot title does not indicate there is to be a change in the constitution, nor does it refer to the present 10% limit on interest charges. I simply cannot link the popular name to the purpose of the act.

The ballot title is equally defective. There is no reference to a change in the present constitutional limit and penalties as they relate to usury. The main thrust of the proposal is to allow the General Assembly to increase the interest rate to any amount they desire by a two-thirds vote. There is nothing in the ballot title stating the purpose is to allow an increase in the present 10% limit except by innuendo. There is nothing in either the title or the name to inform the people that there will be no limit on the interest rate as long as the legislature so provides. There are no guidelines or limitations, indeed nothing, in the popular name or title which would enable a person to understand the proposition on which he is voting.

Either the name or the title should inform the people that the General Assembly, by a two-thirds vote, may establish the interest rate at any figure if the proposal is adopted. In other words, the interest rate will be determined by two thirds of the membership of the General Assembly. There is no other limiting power.

The ballot title does not even hint that the approval of the act would have the effect of validating contracts which at the present time are invalid. Neither is there a hint that the

legislature would be able to determine which charges constituted interest and which charges were non-interest.

I am not saying the name and title are fraudulent or deliberate misrepresentations. It is only natural that the proponent of any proposition to be voted upon by the people would obtain the most favorable name and title possible in order to enhance the chances of approval by the voters. I feel that in the present case the omissions cause the proposal to be defective. None of the statements used in the name or title are false; however, they simply do not measure up to what I consider to be the standards required to notify the voters of the full nature of the amendment.